IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL McCALLUM, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB 08-0660 |
| STATE OF MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Michael McCallum ("McCallum"), a Parole and Probation Agent, brings this employment discrimination claim against his employers, Defendants the State of Maryland and the Maryland Department of Public Safety and Correctional Services (collectively, "Defendants"). McCallum claims that he was denied a promotion because he opposed and complained about what he believed to be unlawful discrimination at work in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*. At the motion to dismiss stage, this Court determined that the scope of McCallum's claim is limited to the alleged discriminatory conduct that occurred in 2005 and 2006. Paper No. 37 at 11. Pending before this Court is Defendants' Motion for Summary Judgment, which contends that McCallum has failed to state a prima facie face of discrimination and cannot rebut the Maryland Department of Public Safety and Correctional Services' legitimate, non-discriminatory reasons for not promoting him. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the following reasons, Defendants' Motion for Summary Judgment (Paper No. 51) is GRANTED.

1

BACKGROUND

This Court reviews the facts relating to this claim in the light most favorable to the petitioner. *See, e.g., Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Plaintiff Michael McCallum, a black male, contends that the Maryland Department of Public Safety and Correctional Services (the "Department") retaliated against him by failing to promote him to the position of Field Supervisor I ("FS I") in 2005 and 2006 because he opposed and complained about racial discrimination at work. Second Am. Compl. ¶ 5.

**A.      The Field Supervisor I Application Process**

The Department administers written examinations each quarter for employees who are interested in applying for the FS I position within the Division of Parole and Probation (the "Division"). Based upon these scores, the Department categorizes applicants as "best qualified", "better qualified" and "qualified." Summ. J. Mem. Ex. C ¶ 3. The Department sends this list of names to the Maryland Department of Budget and Management, which adds the names to the employment eligibility list for the FS I position. *Id.* An applicant's name remains on the list for one year, though he can keep his name on the list by reapplying at the end of each year. *Id.* ¶ 4.

The Division interviews applicants for open FS I positions by randomly selecting a small number of individuals within each of the three categories of applicants. The Division typically interviews three to five applicants, thus not every eligible or "best qualified" applicant is contacted about open positions. *Id.* ¶ 5. Applicants who are interviewed are asked the same series of questions by a three person panel and are scored based upon their answers. An applicant's final overall score is the sum of the three panel member's scores. The panel generally recommends the applicant with the highest score to the appointing authority, the

2

Division's Director, who customarily follows the interview panel's recommendation. Summ. J. Mem. Ex. A. 80-81; Ex. B. ¶ 5. McCallum has served on several interview panels during his employment. *Id*. Ex. A at 57, 62-63.

**B.     McCallum's Employment History**

McCallum has worked for the Department since 1976. *Id*. ¶¶ 9, 16. McCallum advanced up the Parole and Probation job series each year from 1976 to 1979, starting as a Parole and Probation Agent I, becoming an Agent II, an Agent III and finally an Agent Senior. Summ. J. Mem. Ex. A at 8-9, 12-13; Ex. B at ¶ 4. After becoming an Agent Senior, McCallum became interested in being promoted to the position of Field Supervisor I. Before the period of time at issue in this case, McCallum applied and unsuccessfully interviewed for the FS I position in 1992, 1995, 1999 and 2004. Summ. J. Mem. Ex. A. 54-57, 62-63. Notably, McCallum applied and successfully interviewed in 1995, when he was offered the FS I position in the Division's Hyattsville office, where he was currently working. *Id*. 64-66. McCallum declined that position, however, because he did not want to work under Richard Silverman, who would be his superior. *Id*.

McCallum applied and unsuccessfully interviewed for the FS I position in 2005 and in 2006. *Id*. Ex. B. ¶¶ 6-10. On March 15, 2005, an interview panel composed of Colleen Davis, Janice Brown-Newman and John Arney interviewed seven people, including McCallum, for an available FS I position in the Hyattsville, Maryland office. *Id*. Ex. A at 71; Ex. B Attach. 1. The panel gave McCallum a total score of 90, which was the lowest combined score of the seven interviewees. *Id*. Ex. B. Attachs. 1, 2 & 3. The interview panel recommended the highest scoring applicant for the position, who received a score of 241. *Id*. Attach. 4. On February 21,

2006, an interview panel composed of Mary Grace Waldron, Dennis Ezenwaka and Stanley Rogers interviewed ten applicants, including McCallum, for two open FS I positions in the Upper Malboro, Maryland office. *Id*. Attachs. 5 & 6. McCallum received a total score of 79, the second lowest score of the applicants. *Id*. Attach. 7. The interview panel recommended the two highest scoring applicants for the two open FS I jobs, who received scores of 139 and 135 respectively. *Id*. Attachs. 7-9.

C. **The Protected Activity at Issue in this Case[1]**

On September 8, 2005, the Department issued a counseling letter to McCallum after he was seen in his office with his wife, who appeared to be assisting him with his work. Opp'n Ex. 4.[2] On September 12, 2005, McCallum wrote to his supervisor in response to this counseling letter: "I continue to be a victim of unlawful discrimination and retaliation, and after 29 years of faithful service to the agency and State, the adverse conditions of my employment remain unabated." Opp'n Ex. 4 at 1. On October 28, 2005, the Department issued another counseling memorandum to McCallum for insubordinate conduct. *Id*. Ex. 5. On November 2, 2005, McCallum responded to this counseling letter with a memorandum complaining that his work was being "selectively" evaluated "in retaliation for bringing legitimate concerns to [his supervisor's] attention" and that his supervisor was attempting to "build an unwarranted case for

---

[1] In 1983, McCallum joined in filing a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Department, but the EEOC found no probable cause. In 1992 or 1993, McCallum joined in filing a lawsuit in this Court alleging race discrimination against the Department, which was dismissed. As this Court explained at the motion to dismiss stage, the lack of temporal proximity between this protected activity and the alleged instances of retaliation in this case makes any connection too attenuated to support a cause of action under Title VII. Paper No. 37 at 7-8.

[2] McCallum's response mistakenly states the date of the counseling letter as September 8, 2004 rather than 2005. Opp'n Ex. 4 at 1.

4

disciplinary action." *Id*. On November 14, 2005, he wrote a second memorandum to his supervisor alleging that the October 28 counseling letter was "based on selective, unfair and biased evaluation" of his work and that he was being subjected to a "cumulative record of disparate treatment." *Id*. Ex. 6. On July 14, 2006, McCallum wrote a memorandum to Martha Kumer, the Department's Regional Administrator, complaining that his current and past supervisors engaged in "negative and scurrilous communications" about his performance in retaliation for his "numerous complaints of unfair and discriminatory evaluation[s] of [his] work." *Id*. Ex. 8.

On March 13, 2008, McCallum filed his original Complaint in this Court against Defendants. On July 15, 2008, he filed his First Amended Complaint. Paper No. 10. On September 11, 2008, McCallum filed a Second Amended Complaint. Paper No. 18. On February 18, 2009, Defendants moved to dismiss the Second Amended Complaint. Paper No. 34. On May 19, 2009, this Court denied Defendants' Motion to Dismiss, but limited the scope of McCallum's claim to "the alleged discriminatory conduct that occurred during the time Plaintiff was sending the internal memoranda to his supervisor, which was also around the same time that DPSCS filled four Field Supervisor positions between June 2005 and June 2006." Paper Nos. 37 & 38. On May 13, 2010, Defendants moved for summary judgment on the basis that McCallum has not established a prima facie case of retaliation or rebutted the Defendants' legitimate, nondiscriminatory reasons for not promoting him. Paper No. 51.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment

6

must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

To satisfy *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), McCallum must first present enough evidence to prove a *prima facie* case of retaliation. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142-43 (2000). If he can do this, the burden then shifts to Defendants to produce evidence that he was not promoted "for a legitimate, nondiscriminatory reason." *Id*. at 142 (*citing Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If Defendants provide such a reason, the burden shifts back to McCallum to show that Defendants' reason is pretextual. *Karpel v. Inova Health Sys. Servs*., 134 F.3d 1222, 1228 (4th Cir. 1998).

**I.      Prima Facie Case**

In order to state a prima facie case of retaliation, McCallum must demonstrate that: (1) he engaged in a protected activity; (2) Defendants took adverse actions against him; and (3) the protected activity and the adverse action were causally connected. *See Holland v. Washington Homes, Inc*., 487 F.3d 208, 218 (4th Cir. 2007). Defendants challenge only the third prong of this test, contending that McCallum has not shown that his informal complaints were causally related to his failure to be promoted to the FS I position in 2005 and 2006. To prove this causal connection, McCallum must be able to show that Defendants took adverse actions against him "*because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original).

As this Court explained at the motion to dismiss stage, the scope of McCallum's claim is limited to the alleged discriminatory conduct that happened during the time McCallum was

7

sending internal memorandums to his supervisor in 2005 and 2006. Paper Nos. 37 & 38. McCallum has not produced any evidence that the low scores he received after his March 2005 and February 2006 interviews and Defendants' subsequent failure to promote him was retaliation against him for his complaints of unfair treatment and discrimination. As to McCallum's March 2005 interview, to establish a casual connection, a plaintiff must show that the adverse employment action took place after the filing of the discrimination claim. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 (2006). McCallum's March 2005 interview for the FS I position happened approximately six months *before* he received the September 8, 2005 counseling letter, and thus before he began writing to complain to his supervisor that the letter was emblematic of the discriminatory treatment he believed he faced. Thus, there is no question that McCallum failed to receive a promotion after his March 2005 interview because he received the lowest score of the applicants, and not because of any retaliatory motives.

Since McCallum's February 2006 interview occurred after he submitted complaints to his supervisor, the question remains whether the panel gave him lower scores in retaliation for these complaints. McCallum has not, however, produced any evidence that he received lower scores and failed to receive a promotion in retaliation for the complaints he made in September and November 2005. There is no evidence, for example, that two of the panel's members, Stanley Rogers and Dennis Ezenwaka, were even aware of McCallum's complaints. At his deposition, McCallum specifically acknowledged that Ezenwaka, an African-American, had not said anything indicating he was biased against McCallum, and that he had never met Rogers before his interview and did not attribute any ill motives to him either. Summ. J. Mem. Ex. A at 27-29, 74-75. Instead, McCallum expressed concern only as to the third panel member, Mary Grace Waldron, who did have knowledge of his earlier complaints since she had been copied on

8

some of the emails discussing the internal memos McCallum submitted. McCallum has not, however, offered any evidence that Waldron treated or scored him differently than Ezenwaka or Rogers. In fact, Waldron gave McCallum a higher score than Rogers and a comparable score as Ezenwaka, which indicates it is unlikely that her score was influenced by any retaliatory motive. Summ. J. Mem. Ex. B, Attach. 7.

McCallum argues that the lapse of time between when he complained about being the victim of discrimination, in September and November 2005, and when he unsuccessfully interviewed for the FS I position, in February 2006, is sufficient evidence to support an inference that there was a causal connection between the two. Though evidence of temporal proximity can be sufficient to state a causal connection, the temporal proximity must be "very close" to be treated as indirect proof of causation. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action … negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Five months elapsed between McCallum's last complaint about discrimination, in November 2005, and the final decision not to appoint McCallum to the FS I position, which was made in April 2006. Though there is no bright line rule on the issue of temporal proximity, this Court finds that in this case, a five month time lapse is too long a period of time to constitute temporal proximity that is "very close." *See, e.g.,* Westmoreland v. Prince George's County, 2010 U.S. Dist. LEXIS 86553, at *35 (D. Md. Aug. 23, 2010) (holding that "Plaintiff cannot establish a causal connection based upon temporal proximity, as the alleged adverse action (the involuntary transfer) took place more than three months after the protected

9

activity."). Since McCallum has not presented any other evidence of causation, his claim that he was denied a promotion in 2005 and 2006 is unsuccessful.

## II. The Department has Articulated a Legitimate, Nondiscriminatory Reason for Failing to Promote McCallum which He has Not Rebutted

Even if McCallum were able to establish a prima facie case of retaliation, Defendants have articulated a legitimate, nondiscriminatory reason for not promoting him in 2005 or 2006 that he has not rebutted. Defendants have shown that after both of McCallum's 2005 and 2006 interviews, the top scoring interviewees were recommended and appointed to the open FS I position. Thus, Defendants have put forth legitimate, non-discriminatory reasons for choosing other applicants over McCallum for the positions. *See, e.g., Okla. v. Univ. of Md. E. Shore*, 2010 WL 118367, at *7 (D. Md. 2010) ("Defendants have offered a nondiscriminatory reason for denying the Assistant Comptroller position to Plaintiff because a Search Committee concluded that another candidate was more qualified for the position.").

McCallum contends that Defendants' reason for failing to promote him is merely a pretext for their retaliation. McCallum asserts that he should have been promoted to the FS I position because he was more senior and more qualified than the other applicants who interviewed for the job. Defendants do not assert that McCallum was unqualified for the FS I position. Instead, they explain that he did not receive the highest score among the applicants who interviewed for the position, and in accordance with Defendants' policy, he was therefore not recommended for the job. Therefore, McCallum has not rebutted the Defendants' legitimate, nondiscriminatory reasons for failing to promote him to the FS I position in 2005 and 2006.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Paper No. 51) is GRANTED.

A separate Order follows.

Dated: September 10, 2010                    /s/_____
                                             Richard D. Bennett
                                             United States District Judge